# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        Plaintiff,

    v.                                      Case No. 04-CR-52

**ERNESTO GARCIA-SICAIROS**
        Defendant.

---

## SENTENCING MEMORANDUM

Defendant Ernesto Garcia-Sicairos pleaded guilty to conspiracy to distribute five kilograms or more of cocaine, contrary to 21 U.S.C. § 841(b)(1)(A). The probation office prepared a pre-sentence report ("PSR"), which calculated defendant's offense level as 27 (base level 32, U.S.S.G. § 2D1.1(c)(4), minus 2 because defendant qualified for the safety valve, §§ 2D1.1(b)(6); 5C1.2, and minus 3 for acceptance of responsibility, § 3E1.1). Coupled with a criminal history category of I, his imprisonment range was 70-87 months.

In imposing sentence, I considered the factors set forth in § 3553(a), which include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The court's task after considering these factors is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I then consider the types of sentences available, the advisory guidelines and policy statements, and the need to avoid unwarranted disparity in order to produce a reasonable numerical sentence. E.g., United States v. Johnson, No. 05-CR-80, 2005 U.S. Dist. LEXIS 15742, at *8-9 (E.D. Wis. July 25, 2005).

As to the nature of the offense, defendant essentially acted as a middle man between cocaine suppliers and Marvel Belser, a large-scale Milwaukee drug dealer. In all he supplied Belser with 10.5 kilograms of cocaine over the course of about six deliveries in 2002. The fairly large amount involved in this case was an aggravating factor. However, there was no indication of weapon possession, violence or threats, and it appeared that defendant profited minimally.

Defendant came to the attention of authorities after Belser was arrested and began cooperating against his sources. Belser contacted defendant at the behest of law enforcement in February 2003, but defendant put him off. Belser tried again in April 2003, but defendant told him that he was no longer selling cocaine. However, he went on to say that he stopped because he was concerned he was being set up. Thus, it was unclear

whether defendant left the drug business because he had a change of heart rather than to avoid detection and punishment.

As to defendant's character and background, he was 43 years old and had no prior record. He came to this country from Mexico in 1988, apparently lawfully, and made an effort to become a permanent resident. However, those efforts failed, and at the time of sentencing he was considered illegal and a candidate for deportation.

Defendant behaved in a mostly pro-social manner since coming to the United States. He held a good job as a set-up foreman for a concrete company from 1993 to 2004, when he started up his own business. He filed tax returns reporting his income.

Defendant was married from 1989 to 2003, when he divorced. He had two minor children from that relationship, as well as four older children from previous relationships. It appeared that all of his children were lawfully residing in and had assimilated to this country, thus, defendant would lose contact with them when deported. Several family members appeared to support him at sentencing. Defendant's current girlfriend, with whom he had been living, also had positive things to say about him.

Defendant provided the government with all the information he had about the offense, thereby qualifying for the safety valve reduction, and accepted responsibility for his actions. During his allocution, he expressed profound regret at the consequences of his actions on his family, from whom he would now be separated.

Finally, I did not believe that defendant was a danger to the community or likely to re-offend. However, there was a need for a substantial period of confinement to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. There was no restitution due, though defendant did agree to re-pay

$10,000 in buy money as a condition of supervised release. He did not appear to have any particular correctional or treatment needs.

The guidelines called for a term of 70-87 months. I found that a sentence within that range would be slightly greater than necessary to satisfy the purposes of sentencing. For two reasons, I concluded that a sentence just below the range was appropriate. First, defendant's positive personal characteristics were not fully accounted for by the guidelines. He came to this country legally in an effort to better his life, attempted to become a citizen, worked hard and paid taxes. He committed no other crimes. Second, because of this offense defendant faced deportation to Mexico, separating him from his six children, who will not follow him there. Courts have recognized, even before Booker, that such profound collateral consequences merit some consideration at sentencing. See, e.g., United States v. Ferreria, 239 F. Supp. 2d 849, 855-56 (E.D. Wis. 2002); United States v. Agu, 763 F. Supp. 703, 704 (E.D.N.Y. 1991).

Under all of the circumstances, I found that a sentence of 60 months was sufficient, but not greater than necessary. This provided some discount for the factors mentioned above but still held defendant accountable for his actions. As the government noted, despite his sympathetic familial circumstances, it was defendant's own conduct that caused him to forfeit the privilege of remaining in this country. Any further decrease would have depreciated the seriousness of the offense and created unwarranted disparity. The modest reduction I granted was supported by the particular facts of the case.

Though it may have been academic given the likelihood of deportation, I also ordered defendant to serve a three year supervised release term and to re-pay the buy money as a condition. Other conditions of the sentence appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2005.

```
                                     _____
                                     LYNN ADELMAN
                                     District Judge
```